(No. 12578.—Judgment affirmed.)

MARGARET MCFARLANE, Admx., Defendant in Error, *vs.*
THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in
Error.

*Opinion filed June 18, 1919.*

1. NEGLIGENCE—*what questions are for the jury.* In an action
for negligence the questions of the preponderance of the evidence,
the credibility of the witnesses and the force of evidence tending
to impeach the veracity of the witnesses are for the jury.

2. SAME—*controverted questions of fact are settled by verdict
of jury and judgment of Appellate Court.* In an action for dam-
ages for wrongful death all controverted questions of fact are
settled by the verdict of the jury and the judgment of the Ap-
pellate Court, and the only question of fact for the Supreme Court
is whether or not there is any evidence in the record fairly tend-
ing to support the cause of action.

3. SAME—*personal service of deceased is element of pecuniary
loss to next of kin.* In an action for damages for wrongful death
the jury must calculate the damages with reference to a reasonable
expectation of benefit to the next of kin from the continuance of
the life of the deceased, and one of the elements of pecuniary loss
to the next of kin is the personal service of the deceased.

4. INSTRUCTIONS—*instructions should be read as a series.* In
ascertaining whether the jury have been misled by an alleged faulty
instruction other instructions on the subject should be considered.

5. SAME—*when it is not error to give instruction referring to
declaration.* If the declaration in an action for negligence is suf-
ficient, it is not error to give an instruction to the effect that if the
plaintiff has made out a case as alleged in the declaration the jury
should find the defendant guilty, but such practice is not approved.

WRIT OF ERROR to the Second Branch Appellate Court
for the First District;—heard in that court on appeal from
the Superior Court of Cook county; the Hon. JOSEPH B.
DAVID, Judge, presiding.

HARRY P. WEBER, GEORGE W. MILLER, and ARTHUR
J. DONOVAN, (JOHN R. GUILLIAMS, and FRANKLIN B.
HUSSEY, of counsel,) for plaintiff in error.

EDWARD J. GREEN, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court:

This cause comes to this court by writ of *certiorari* to the Appellate Court to review a judgment of that court affirming a judgment of the superior court of Cook county for $2500 in an action on the case instituted by Margaret McFarlane, administratrix of the estate of Alice McFarlane, deceased, against the Chicago City Railway Company to recover damages for the death of Alice McFarlane.

There are many assignments of error, but plaintiff in error relies for reversal upon the following grounds: First, the evidence does not fairly and reasonably tend to show that the death of Alice McFarlane was proximately caused by the injuries sustained, and the court erred in refusing to direct a verdict for plaintiff in error; second, the court erred in the giving and refusing of instructions.

The declaration consisted of three counts. The first count alleges, in substance, that the deceased was a passenger on an east-bound electric car of the plaintiff in error operating on Forty-seventh street, in the city of Chicago; that Forty-seventh street intersects a street known as Vincennes avenue; that when said car arrived near Vincennes avenue it stopped for the purpose of allowing deceased and other passengers to alight therefrom; that while deceased was in the act of alighting, and while in the exercise of ordinary care for her own safety, the plaintiff in error, by its servants, so carelessly, negligently and improperly managed and operated said car that the car was jerked, jolted, jarred and moved, and the deceased was by reason thereof thrown to and upon the street and suffered serious injuries, from which she died. The count further alleges heirship and issuance of letters of administration. The allegations of the second count are substantially the same as those of the first count, except the second count alleges that while said car was near to and approaching Vincennes avenue, a place then usually used by plaintiff in error for the purpose

of receiving and discharging passengers, and while said car was then moving slowly at said place and was about to stop, and while the deceased was in the act of alighting from said car in the exercise of due care, all of which plaintiff in error knew or should have known, the servants of plaintiff in error then and there so negligently managed and operated said car that it was suddenly and hurriedly started and jerked, jolted, moved and swayed, and by reason thereof deceased was thrown to the street and received therefrom said injuries. The third count alleges that the car was stopped for the purpose of allowing deceased and other passengers to alight and that she was in the act of doing so and exercising ordinary care, all of which plaintiff in error knew or should have known, when plaintiff in error, by its servants, negligently started the car while deceased was in the act of alighting and before she had a reasonable time in which to alight, by reason whereof she was thrown and received injuries from which she died January 13, 1914.

The first point to be considered is whether or not the court erred in refusing to give the peremptory instruction. This raises the question whether there was any evidence which fairly and reasonably tended to show that the injuries received caused the death of Alice McFarlane. Primarily, it is a question for the trial court whether the evidence, with all the legitimate and natural inferences to be drawn therefrom, is sufficient, if credited, to sustain a verdict. On consideration of such a motion the trial court has nothing to do with any question as to the preponderance of the evidence or the credibility of the witnesses or the force to be given to evidence having a tendency merely to impeach the veracity of the witnesses. The only question which the court has to determine is whether there is in the record any evidence which, if true, fairly tends to prove the allegations of the declaration. (*Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206; *Woodman* v. *Illinois Trust and Savings Bank,* 211 id. 578.) The question of the weight to be given the

testimony is a question for the jury.    All controverted
questions of fact are settled by the judgments of the trial
and Appellate Courts, and the only question in this court
is whether or not there is any evidence in the record fairly
tending to support the cause of action of defendant in error.

The accident occurred about six o'clock in the evening
of December 3, 1913.    The deceased, a widow aged fifty-
seven years, was a passenger on an east-bound car belong-
ing to plaintiff in error.    The car on which deceased was
a passenger was traveling east on Forty-seventh street, in
the city of Chicago, and was following closely another car
operated over the same tracks.    When the car in question
left Grand boulevard deceased requested the conductor to
signal the car to stop at Vincennes avenue, the next regular
stopping place.    Both cars were traveling very slowly.    Wil-
liam White testified that he was an employee of the city
of Chicago; that he was standing on the rear platform of
the car in question and noticed a lady come to the door and
call for Vincennes avenue; that the conductor pulled the
bell for the stop; that he was counting his transfers and
paid no further attention to the lady; that she pulled the
door open and stepped out upon the platform; that she
stepped down on the step, took hold of her dress with one
hand and held to the car with the other hand; that the
car stopped and the lady started to step to the ground; that
just as she was about to put her foot on the ground the
conductor gave the motorman the signal and the car started
with a jerk and threw the lady to the pavement; that he and
the conductor picked her up and put her in a doctor's car.

Dr. Richard W. Carter testified that on the evening of
the accident he was on Forty-seventh street between Vin-
cennes avenue and Grand boulevard and that at the time
the accident occurred he was on the sidewalk, facing the
street cars; that there were two cars running east along
Forty-seventh street, quite near together; that he saw the
second car stop between the alley and Vincennes avenue and

saw it stand for an instant and then move forward; that immediately after it started he saw a person lying in the street; that he rushed to assist and found the person lying in the street to be a woman who he learned was Mrs. Alice McFarlane, the deceased; that he found her in considerable distress and quite helpless but conscious; that he placed her in his automobile and drove her to her home, which was near by; that there he made an examination and found a fracture of the patella of the right knee and a fracture of the second phalanx of the second finger of the left hand and considerable injury to the left shoulder and left thorax region; that he placed her leg in a cast, applied splints to the finger and applied a compress and binder to the thorax; that he visited her at frequent intervals until approximately the time of her death, which occurred on January 13, 1914, about forty days after the accident, the number of his visits amounting in all to about twenty-five; that the leg was in a cast for probably five weeks; that she continued to complain of her side; that she suffered from frequent attacks of syncope; that she had difficulty in breathing; that at times she passed into an unconscious state; that there was a decided congestion of the left lung; that he attended the post-mortem, which revealed myocarditis, (an inflammation of the muscles of the heart,) and that the kidneys were congested but not inflamed.

Margaret McFarlane, daughter of the deceased and defendant in error here, testified that prior to receiving the injuries deceased did her own work and that she had never complained of illness; that she kept a seven-room house, in which five people lived,—the mother, an adult son and daughter and two roomers; that the day after the accident deceased had frequent fainting spells and that she gasped for breath, and that these attacks recurred at frequent intervals until her death; that before the accident deceased had never had fainting spells nor had she ever shown any evidence of diseased heart or lungs.

Evidence in behalf of plaintiff in error in part supported the case of defendant in error. It was substantially as follows: Richard B. Thornton, the conductor on the car, did not testify but his testimony given before the coroner's jury was admitted in evidence. It was practically the same as that of White, except he says that while he was counting transfers deceased came to the door immediately after he left Grand boulevard and asked him to let her off at Vincennes avenue; that he signaled the motorman to stop at Vincennes avenue and then continued to count his transfers; that the deceased stepped onto the rear platform and started to step down to the car step; that he put his hand on her shoulder and told her to wait until the car came to a full stop; that she said she would, and that he stepped back to his position and continued to count his transfers; that the car was following another car and was moving very slowly,—sometimes as slowly as three miles an hour; that while the car was thus moving slowly deceased voluntarily stepped to the street and was thrown to the pavement; that he immediately gave three emergency bells as a signal to the motorman to stop; that the car did not stop until after he gave the three emergency bells; that deceased fell about 150 feet west of Vincennes avenue, which was a short distance east of the alley. Timothy Griffin, the motorman, testified that he made no stop from the time he left Grand boulevard until he received the three emergency bells. Leonard C. Monroe and Frank H. Monaghan, two boys riding on the front platform, corroborate him in this. Dr. Joseph Springer, the coroner's physician, testified that he held a post-mortem on the body of deceased. The injuries as described by Dr. Springer are substantially the same as described by Dr. Carter. When asked his opinion as to the cause of death he stated that the deceased came to her death from organic heart disease, complicated by the injuries which the post-mortem revealed.

288 — 31

It is clear that the evidence favorable to the theory of defendant in error, if credited, fairly and reasonably tends to show that the injuries caused the death of Alice McFarlane and that such injuries were the result of the negligence of the servants of plaintiff in error. On this evidence the jury have found that the injuries received in this accident caused her death, and the Appellate Court having approved this finding, this court is precluded from considering the question. The trial court did not err in refusing to direct a verdict in favor of the plaintiff in error.

It is next urged that the trial court erred in giving instruction No. 8, which reads:

· "If the jury find a verdict in favor of the plaintiff under the evidence and the instructions of the court, then the jury will be required to assess the plaintiff's damages. In assessing the plaintiff's damages, if any, the jury should allow such damages as will compensate the daughter and two sons of Alice E. McFarlane, deceased, for such pecuniary loss *and personal service she would have rendered them,* if any, as shown by the evidence, as the children of the deceased have sustained by reason of her death, not exceeding, however, the sum of $10,000."

The italics are ours, and the plaintiff in error insists that the giving of this instruction with these words following "pecuniary loss" was reversible error. It contends that the instruction does not limit recovery to pecuniary loss, but authorizes the jury, in addition thereto, to allow damages as compensation for personal service she would have rendered the next of kin, if any. In every action of this character "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death." (Hurd's Stat. chap. 70, sec. 2.) There is no rule by which the pecuniary loss can be exactly determined, and the jury must therefore calculate the damages with reference to a reasonable expectation of benefit from the continuance of the life. These

children might reasonably expect in many ways to derive pecuniary benefit from the continued life of the intestate. It is not required that the evidence shall afford data from which the extent of the pecuniary loss can be ascertained with certainty. Clearly, one of the elements of pecuniary loss is the personal service of deceased. (*Goddard* v. *Enzler*, 222 Ill. 462; *Baltimore and Ohio Southwestern Railway Co.* v. *Then*, 159 id. 535; *Illinois Central Railroad Co.* v. *Reardon*, 157 id. 372; *City of Chicago* v. *Keefe*, 114 id. 222.) Whatever effect these additional words could have had upon the minds of the jurors would not have been with respect to the right of recovery. They tended rather to limit the injuries than to broaden them. We do not believe that the jury were misled by the phrase in the instruction.

If it be conceded that there was a slight inaccuracy in the wording of instruction No. 8, this was cured by the following instructions given at the request of plaintiff in error:

12. "This is an action to recover damages to the next of kin of the deceased. Under the statute the next of kin can only recover, even where the defendant is guilty, such damages as are a fair and just compensation with reference to the pecuniary injuries resulting to the next of kin of said deceased person from such death, and even if you believe from the evidence, under the law as stated in the instructions of the court, that defendant is guilty as charged in the declaration, you can allow to the plaintiff only such damages as will compensate the next of kin for the pecuniary injury, if any are shown by the evidence, resulting from the death of plaintiff's intestate."

25. "With reference to the question of damages, if you reach a conclusion where you will have to consider them at all, the feelings of the children or other relatives, or their wealth or poverty, cannot be considered in assessing damages in a case like this. You cannot allow one dollar for solace or comfort or sorrow of the family. It is only the pecuniary or money loss which the evidence may show

the next of kin have suffered by the death of the deceased. If the evidence shows that they have suffered any pecuniary or money loss by reason of said death, that can be considered in this case."

26. "In this case, even if you find for the plaintiff, you can allow only such damages as will make good the pecuniary loss, if any is shown by the evidence, sustained by the next of kin of the person deceased. Mental suffering or loss of domestic or social happiness or the degree of the culpability of the defendant, if any, are not proper elements in the calculation of damages. You cannot award exemplary or vindictive damages."

These instructions, considered with instruction No. 8, are not contradictory nor inconsistent. They explain the expression used in No. 8 and as a series correctly state the rule of liability. The error, if any, was obviated and rendered harmless. *Richardson* v. *Nelson*, 221 Ill. 254.

Complaint is also made in regard to the giving of instruction No. 6, which is:

"If you believe from the evidence that the death of Alice E. McFarlane was caused by the negligence of the defendant as alleged in the declaration or some count thereof, and that Alice E. McFarlane herself was in the exercise of ordinary care for her own safety at and before the time of the injury, then you should find the defendant guilty."

It is urged that this instruction was so inartificially drawn that it could very well have been understood by the jury to mean that a recovery was warranted on proof that the death was caused by the acts of defendant alleged in the declaration to have been negligent, together with ordinary care on the part of deceased, and without proof that such acts were, in fact, negligent. We think the instruction is not susceptible of the construction placed upon it by plaintiff in error. Instructions to the effect that if the plaintiff has made out a case as alleged in the declaration then the jury should find the defendant guilty have been approved

by this court in a number of cases, and it is unnecessary to repeat what is said in those cases.  (*United States Brewing Co.* v. *Stoltenberg,* 211 Ill. 531.)  A similar instruction was under discussion in *Krieger* v. *Aurora, Elgin and Chicago Railroad Co.* 242 Ill. 544, and we there reviewed the authorities at length.  In that case the averment in the declaration, which by reference was incorporated into the instruction, limited the due care of plaintiff to the time when plaintiff was in danger, regardless of his conduct in putting himself in that position.  The instruction herein complained of is not so limited but clearly included the time at and before the injury.  It is better and safer practice not to give an instruction of this character, for the reason that the court should define the issues to the jury without referring them to the pleadings to ascertain what they are. Reference is made to the *Krieger case, supra,* for our reasons for this holding.

Complaint is also made of the court's action in refusing instructions 1 and 2 offered by plaintiff in error.  These instructions did not correctly state the law and were properly refused.

Five instructions were given on behalf of defendant in error and eighteen instructions on behalf of plaintiff in error.  "The law applicable to different questions may be stated in separate instructions and the entire law applicable to all the questions involved in a case need not be stated in each.  In such case the instructions supplement each other, and if they present the law fairly when viewed as a series, it will be sufficient."  (*Pardridge* v. *Cutler,* 168 Ill. 504.) We think the instructions, considered as a series, very fairly presented the law applicable to the case and that there was no error in the giving or refusing of instructions.

Finding no reversible error in the record the judgments of the Appellate Court and the superior court of Cook county are affirmed.            *Judgment affirmed.*